# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| KIMBERLY HAGBERG, | ) | |
| o/b/o EMIL P. HAGBERG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 6:16-CV-3300-DGK |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Kimberly Hagberg,[1] on behalf of her deceased husband, Emil P. Hagberg ("Plaintiff"), petitions for review of an adverse decision by Defendant, the Acting Commissioner of Social Security ("Commissioner"). Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. The administrative law judge ("ALJ") found Plaintiff had multiple severe impairments, including diabetes mellitus with neuropathy, obesity, fibromyalgia, and right shoulder impairment, but retained the residual functional capacity ("RFC") to perform work as a bench packager, bench assembler, and sorter.

As explained below, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is therefore AFFIRMED.

**Procedural and Factual Background**

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

---

[1] Plaintiff Kimberly Hagberg was substituted for her deceased husband, Emil P. Hagberg, on July 17, 2017. In this order, the Court uses "Plaintiff" to refer to the original plaintiff, Emil P. Hagberg.

Plaintiff filed the pending application on February 14, 2014, alleging a disability onset date of December 15, 2012. The Commissioner denied the application at the initial claim level, and Plaintiff appealed the denial to an ALJ. On November 23, 2015, the ALJ held a hearing and on December 29, 2015, the ALJ issued a decision finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on April 21, 2016, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

**Standard of Review**

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

**Discussion**

The Commissioner follows a five-step sequential evaluation process[2] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by

---

[2] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or

reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

Plaintiff argues that the ALJ erred by: (1) failing to consider the overall record, resulting in an erroneous finding that Plaintiff did not meet Listing 11.14; (2) rejecting the opinion of Plaintiff's treating physician; (3) discounting Plaintiff's subjective complaints; and (4) failing to consider the combined effects of Plaintiff's impairments. These arguments are without merit.

**I.  The ALJ properly found that Plaintiff did not meet Listing 11.14.**

First, Plaintiff argues the ALJ failed to consider the entire record, resulting in a finding that he failed to meet Listing 11.14 for peripheral neuropathies.

To be found disabled at Step Three, a plaintiff must show that his impairment or combination of impairments meet or equal all of the specified criteria in a listing. *See Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). "The burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing." *Id.*

At the time of the ALJ's decision, Listing 11.14 required peripheral neuropathies characterized by "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station," in spite of prescribed treatment. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 11.14 (effective Aug. 12, 2015, to May 23, 2016).[3]

---

medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

[3]Listing 11.14 has since been amended to require peripheral neuropathies characterized by either: (A) "[d]isorganization of motor function in two extremeties, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities"; or (B) "[m]arked limitation

Here, the ALJ found the "medical records [did] not show persistent disorganization of motor function as defined by [Listing 11.14]." R. at 16. Rather, she noted, "the record indicate[d] that the claimant is able to ambulate properly with a cane," and "no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment." R. at 16. Substantial evidence in the record supports this finding. For example, multiple physician reports state Plaintiff had a normal range of motion, R. at 748 (Nov. 13, 2014, treatment notes); 753 (Jan. 7, 2015, treatment notes); 883 (June 16, 2015, treatment notes), and normal gait and station, R. at 680 (May 21, 2014, neurology exam notes).

Accordingly, the Court finds the ALJ's Step Three determination is supported by substantial evidence. Though Plaintiff points to some evidence that may support an alternate outcome, this evidence does not push the ALJ's decision outside of the "available zone of choice." *Buckner*, 646 F.3d at 556.

## II. The ALJ properly weighed the medical evidence.

Plaintiff next argues the ALJ erroneously discounted the joint medical source statement of treating physician Dr. Eunice Kim, M.D. ("Dr. Kim") and physical therapist Steven Jovanovich ("Mr. Jovanovich").

"[A] treating physician's opinion is generally entitled to substantial weight; however, such an opinion does not automatically control in the face of other credible evidence on the record that detracts from that opinion." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (internal quotations and citation omitted). "Moreover, an ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Id.* "An ALJ may justifiably discount a treating

---

in physical functioning and in one of the following: 1. [u]nderstanding, remembering, or applying information; or 2. [i]nteracting with others; or 3. [c]oncentrating, persisting, or maintaining pace; or 4. [a]dapting or managing oneself." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 11.14 (internal citations omitted).

4

physician's opinion when that opinion is inconsistent with the physician's clinical treatment notes" or when the physician's "opinions are inconsistent or contrary to the medical evidence as a whole." *Id.* Whatever weight the ALJ decides to give a physician's opinion, she must "always give good reasons." 20 C.F.R. § 404.1527(c)(2). In addition to evidence from licensed physicians, an ALJ may consider evidence from other sources, including nurse practitioners and licensed healthcare workers. *Id.* §§ 404.1502(d); 404.1527(f)(1). An ALJ has discretion to consider opinions from these other sources "*so long as* [they are] not wholly inconsistent with other opinions." *Crawford v. Colvin*, 809 F.3d 404, 408 (8th Cir. 2015).

In their medical source statement, Dr. Kim and Mr. Jovanovich opined that Plaintiff had several extreme limitations, including an inability to sit for more than fifteen minutes at a time, stand for more than five minutes at a time, or stand for more than two hours throughout an eight-hour workday. R. at 786. The ALJ noted these extreme limitations were inconsistent with consulting physicians' diagnoses, R. at 93 (indicating Plaintiff could stand or walk, with normal breaks, for "[a]bout 6 hours in an 9-hour workday"), and Dr. Kim's own observations of Plaintiff, R. at 883-84 (June 15, 2015, treatment notes indicating Plaintiff had a "[n]ormal range of motion" and his coordination was "normal"), 904 (Sept. 30, 2015, treatment notes indicating Plaintiff had a "[n]ormal range of motion" and exhibited no edema). It was also inconsistent with Plaintiff's own testimony, which indicated he could stand for ten to fifteen minutes at a time and sit for twenty minutes at a time. R. at 48.

Because this medical source statement was inconsistent with other medical record evidence and Dr. Kim's own treatment notes, the ALJ did not err in affording it no weight.[4]

---

[4] The ALJ also did not err in exercising her discretion to reject the findings of Mr. Jovanovich, who is not an "acceptable medical source," as inconsistent with other medical record evidence. *See Crawford*, 809 F.3d at 408.

5

### III. The ALJ properly discounted Plaintiff's credibility.

Next, Plaintiff argues the ALJ erred in finding Plaintiff's testimony regarding his symptoms was "not entirely credible." R. at 18.

In analyzing a claimant's subjective complaints, the ALJ takes into account any objective medical basis that should support subjective testimony of limitations and "all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and examining physicians." *Wright,* 789 F.3d at 853 (quoting *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). Because the ALJ "is in a better position to gauge credibility and resolve conflicts in evidence," this Court will not substitute its opinion for the ALJ's where there is substantial evidence to support the finding. *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007).

Here, Plaintiff's testimony was internally inconsistent and conflicted with medical findings that did not support such extensive limitations on his daily activities. Plaintiff submitted a written report asserting he did not prepare any meals or do any household chores, R. at 293, but later testified at his hearing that he "cook[s] once in a while" and does dishes. R. at 52. Plaintiff also reported that he had to frequently elevate his legs due to edema, R. at 793, but edema was rarely mentioned by his doctors. R. at 775 (noting edema); 791 (noting edema).

Because there is substantial evidence to support the ALJ's credibility determination, the Court will not disturb it.

### IV. The ALJ properly considered the combined effects of Plaintiff's impairments.

Finally, Plaintiff argues the ALJ failed to consider the combined effects of his bilateral carpal tunnel syndrome and diabetic neuropathy on his ability to use his hands. But, the ALJ

6

"considered all of [Plaintiff's] severe and non-severe impairments," and did "not find that [the non-severe] impairments, considered singly and in combination with the claimant's severe impairments, impose[d] any additional limitations [other] than those assessed in the residual functional capacity."[5] R. at 21. Thus, the combined effect of Plaintiff's impairments *was* considered, and Plaintiff's final argument is rejected.

## Conclusion

Because substantial evidence on the record as a whole supports the ALJ's opinion, the Commissioner's decision denying benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date:  September 14, 2017           /s/ Greg Kays
                                                        GREG KAYS, CHIEF JUDGE
                                                        UNITED STATES DISTRICT COURT

---

[5] Elsewhere in her opinion, the ALJ found "mild findings and minimal treatment" for Plaintiff's carpal tunnel syndrome, R. at 14, and that while "the claimant has the . . . severe impairment of diabetes with neuropathy, [the evidence] does not indicate that this impairment is so significant as to prevent the claimant from performing basic work activities." R. at 19.